IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| DEBRA BROWN, ANNELL SMALLS JACKSON, *and* LUTRICE JENKINS, *On Behalf of Themselves and Others Similarly Situated*, | Civil Action No. 2:15-cv-4105-RMG |
| Plaintiffs, | **ORDER** |
| v. | |
| FIVE STAR QUALITY CARE, INC. | |
| Defendant. | |

This matter is before the Court on Defendant's motion to dismiss and to compel Arbitration. (Dkt. No. 7.) For the reasons set forth herein, the Court **GRANTS** Defendant's motion to compel arbitration, **DENIES** Defendant's motion to dismiss, and **STAYS** this matter pending arbitration.

I. **Legal Standard**

A. **Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") reflects a liberal policy toward arbitration. The Act provides that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction "shall be valid, irrevocable and enforceable" unless there exists grounds for revocation in law or equity. 9 U.S.C. § 2; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A litigant can compel arbitration under the FAA if the litigant can demonstrate: "'(1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the

failure, neglect or refusal of the [party] to arbitrate the dispute.'" *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (quoting *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002)). District courts have "no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins*, 303 F.3d at 500.

Whether the parties agreed to arbitrate a particular dispute is a question of state law governing contract formation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). And where the parties did so agree, there are certainly limits on the enforceability of arbitration agreements, particularly where the dispute resolution process is "utterly lacking in the rudiments of even-handedness" or is so "one-sided that . . . [the] only possible purpose is to undermine the neutrality of the proceeding." *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 935–38 (4th Cir. 1999). The party resisting arbitration bears the burden of showing that the issue is unsuitable for arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

### B.     Motion to Dismiss or to Stay Proceedings

The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration, and "[t]his stay-of-litigation provision is mandatory." *Adkins*, 303 F.3d at 500; *see also* 9 U.S.C. § 3; *Hooters*, 173 F.3d at 937. The Fourth Circuit has also held that if all of the claims asserted in a complaint are subject to arbitration, dismissal of the complaint is "an appropriate remedy." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). The Fourth Circuit has noted the inconsistency between its opinions on this issue. *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012) ("There may be some tension between our decision in *Hooters*—indicating that a stay is required when the arbitration agreement 'covers the matter in

2

dispute'—and *Choice Hotels*—sanctioning dismissal 'when all of the issues presented . . . are arbitrable.'"). It has also noted that the circuits are divided on this question, which it has not resolved for this Circuit. *Id.*

A litigant wishing to compel arbitration without answering the complaint should move under Rule 12 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(a). In this Circuit, litigants seeking to should move under Rule 12(b)(3) (improper venue). *Aggarao*, 675 F.3d at 365 n.9. When considering a motion under Rule 12(b)(3), the Court may consider evidence outside the pleadings, but the facts are viewed light most favorable to the plaintiff because a plaintiff need only make a *prima facie* showing of proper venue to survive a motion to dismiss. *Id.* at 365–66.

## II.  Background

### A.  Plaintiff's Allegations

Five Star is a for-profit Maryland corporation that operates more than 260 senior living facilities in the United States, including the Ashley River Plantation facility located in Charleston, South Carolina. Five Star employed Plaintiffs from various times until 2014 as hourly care managers in the Ashley River Plantation facility's Alzheimer's unit. According to the Complaint, Five Star required its Alzheimer's unit care managers—including Plaintiffs—to work off the clock without compensation in violation of the Fair Labor Standards Act ("FLSA") and the South Carolina Payment of Wages Act. Five Star required care managers to clock out for thirty minutes of each shift for a meal break, but did not schedule anyone to cover their duties during those meal breaks. The Alzheimer's unit residents as a group required near-constant care because of their dementia. Because Five Star did not provide for that care during care managers' meal breaks, care managers such as Plaintiffs were required to provide it themselves despite having clocked out.

Plaintiffs seek recovery of wages allegedly owed for work Five Star required Plaintiffs to

perform during meal breaks, including overtime compensation where appropriate, and treble damages under the South Carolina Payment of Wages Act. Plaintiffs also seek certification of this action as a class action on behalf of similarly situated employees, pursuant to 29 U.S.C. § 216(b).

### B.      The Arbitration Agreement

In April 2012, Five Star introduced a "Mutual Agreement to Resolve Disputes and Arbitrate Claims" (the "Arbitration Agreement"). The Arbitration Agreement provides for binding arbitration of employment disputes. Five Star required all new employees to agree to the Arbitration Agreement as a condition of employment. Current employees were given an opportunity to opt-out of the Arbitration Agreement. Five Star distributed the Arbitration Agreement to Ashley River Plantation employees at the end of a staff meeting on May 30, 2012, immediately after introducing a new paid time off policy. Employees signed a "receipt and acknowledgement form" with operative language: "I acknowledge receipt of the Mutual Agreement to Resolve Disputes and Arbitrate Claims." Plaintiffs Annell Jackson and Lutrica Jenkins signed the acknowledgement form on May 30, 2012. Plaintiff Debra Brown was hired in June 2013, well after the introduction of the Arbitration Agreement, but due to a clerical error, she was given an opportunity to opt-out. She signed the acknowledgement form on June 14, 2013.

Continuing employment with Five Star without opting-out of the Arbitration Agreement within thirty days of receipt constituted acceptance of the Arbitration Agreement. To opt-out, employees were required to contact Five Star's Human Resources Department in Massachusetts to request an opt-out form, to fill out that form, and then to return it to Massachusetts by registered or certified mail, return receipt requested. No employees at the Ashley River Plantation facility completed that process. No evidence suggests that the opt-out form was available at the Ashley River Plantation facility.

4

Under the Arbitration Agreement, employees wishing to assert a claim must exhaust a grievance process before proceeding to arbitration. Employee must notice their complaint by mailing a "dispute resolution claim form" by certified or overnight mail, return receipt requested, to Massachusetts. Employees must then file for arbitration within thirty days of the earlier of Five Star's response to their grievance or the due date for Five Star's response. Failure to file for arbitration within that period waives the claim.

To file for arbitration, the Arbitration Agreement instructs employees to "follow the then current procedures required by the Arbitration Firm." The arbitration firm selected by Five Star was, and remains, National Arbitration and Mediation, Inc. ("NAM, Inc."), a publicly traded, for-profit company based in New York. NAM, Inc.'s filing procedure is for an employee to complete a demand for arbitration form, available on the NAM, Inc. website, and to transmit it to NAM, Inc., who then would serve it on Five Star.

A single arbitrator conducts the arbitration. The arbitration firm nominates three arbitrators, from whom the employee and then Five Star may each strike one name; the surviving nominee becomes the arbitrator. Since the arbitration firm selects all three nominees, however, it necessarily follows that the arbitration firm (which, in turn, is selected by Five Star) selects the arbitrator. Appeal from the decision of the arbitrator selected by the arbitration firm may be made to a panel of three arbitrators selected by the arbitration firm. Five Star encouraged employees to navigate the grievance and arbitration process without legal counsel.

The Arbitration Agreement limits discovery to five interrogatories, five requests for production including subparts, and two depositions. It prohibits discovery of electronically stored information, except for a search of no more than two email addresses for no more than five search terms over a period of no more than twelve months. It does not contain any exception granting

5

the arbitrator discretion to vary from these restrictions. These restrictions contrast sharply with NAM, Inc.'s standard "Employment Rules and Procedures," available on the NAM, Inc. website, which provide for initial disclosures, twenty interrogatories, thirty requests for production, three depositions, which contain no special prohibition against discovery of electronically stored information, and which grant the arbitrator discretion to permit additional discovery based on a showing of "substantial need," provided that additional discovery is not "overly burdensome and will not unduly delay conclusion of the Arbitration."

Under the Arbitration Agreement, arbitration must occur near the employee's workplace, and Five Star must pay all arbitration fees and waives any recovery of costs or fees. However, that waiver does not apply to "supervisors who may be individually accused in the grievance."

The Arbitration Agreement states "all disputes regarding the enforcement of this Agreement, any of the provisions of this Agreement or whether a party's claim is subject to this Agreement shall be determined in accordance with the law of the State of Maryland" and "[a]ll challenges to the enforceability of any provision of this Agreement shall be brought before the arbitrator, and the arbitrator shall rule on all questions regarding the interpretation and enforceability of this Agreement." The Court shall refer to the latter provision, which delegates authority to the arbitrator to determine certain threshold issues, as the "Delegation Provision." In contrast to the threshold issues concerning the interpretation and enforceability of the Agreement, which are governed by Maryland law, "the law of the jurisdiction in which [the employee] is primarily employed will govern the substance of [the employee's] grievance."

Finally, the Arbitration Agreement prohibits class or collective resolution of employment claims, and waives employees' right to a jury trial in the event the agreement to arbitrate is held unenforceable.

III.  **Analysis**

   A.  **Motion to Compel Arbitration**

   In the Fourth Circuit, a motion to compel arbitration must satisfy a four-factor test. *Adkins*, 303 F.3d at 500–01. Here, three of those factors are undisputed. There clearly is a dispute between the parties, the Arbitration Agreement is itself an example of interstate commerce, and Plaintiffs have failed to arbitrate the dispute. In addition, it is undisputed that there is a written agreement which purports to cover—and, if valid, does cover—this dispute. Thus, the only issue before the Court is the validity of the Arbitration Agreement.

   To determine the validity of the Arbitration Agreement, the Court must first determine whether the parties entered into that agreement. Plaintiffs have not disputed that they entered into the Arbitration Agreement with Five Star, and, regardless, it is clear that they did enter into it. South Carolina law on the formation of contracts controls whether the parties here executed the Arbitration Agreement, because Plaintiffs worked for Five Star in South Carolina and allegedly received and assented to the Arbitration Agreement in South Carolina. In South Carolina, continuing in employment suffices to accept an arbitration agreement. *Towles v. United HealthCare Corp.*, 524 S.E.2d 839, 845 (S.C. Ct. App. 1999) ("We find the Acknowledgment constituted a specific communication of an offer which conditioned [plaintiff]'s continued employment on his acceptance of the Employment Arbitration Policy as part of his employment contract. . . . [Plaintiff] accepted the offer by continuing in his employment.").

   Having found that the parties entered into the Arbitration Agreement, the Court would next turn to the question of its enforceability. However, the Delegation Provision delegates the issue of the enforceability of the Arbitration Agreement to the arbitrator. The Supreme Court requires enforcement of such delegation clauses absent a valid challenge specific to the delegation clause—

7

as opposed to a challenge to the enforceability of the arbitration agreement as a whole. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 68–70 (2010). "[A]fter *Rent-A-Center*, '[t]he presence of a delegation provision . . . narrows the [c]ourt's role' to examining only 'whether there is a valid delegation provision'; if there is, the delegation clause must be enforced, 'reserving for the arbitrator issues that implicate the agreement to arbitrate as a whole, as well as larger issues such as the validity of the contract as a whole or determination of the scope of arbitrable claims." *Meena Enterprises, Inc. v. Mail Boxes Etc.*, 8:12-cv-1360-DKC, 2012 WL 4863695, at *6 (D. Md. Oct. 11, 2012) (quoting *In re Toyota Motor Corp.*, 858 F. Supp. 2d 967, 982 (C.D. Cal. 2012)); see also *Madgrigal v. AT&T Wireless Servs. Inc.*, 1:09-cv-0033-OWW, 2010 WL 5343299, at *2 (E.D. Cal. Dec. 20, 2010) ("[*Rent-A-Center*] confirmed that a provision delegating to the arbitrator authority to determine the validity of an arbitration agreement bars a court from adjudicating a party's claim of unconscionability unless that claim is based on alleged unconscionability of the delegation provision itself.")

Here, Plaintiffs do not assert any challenges specific to the Delegation Provision. Instead, they argue that the overall Arbitration Agreement does not provide "an adequate and accessible substitute forum in which to resolve [their] statutory rights" because that it does not provide for "all types of relief" that would otherwise be available and that it does not provide for "more than minimal discovery." Those assertions challenge the enforceability of the Arbitration Agreement, as a whole, but they do not dispute the fact that the parties entered into the Arbitration Agreement. Once the court determines that the parties entered into the Arbitration Agreement, the Delegation Provision requires the court to refer any further issues concerning the interpretation and enforceability of the Agreement to the arbitrator. *See Wynn v. Five Star Quality Care Trust*, No. 3:13-cv-01338, 2014 WL 2560603, at *7–8 (M.D. Tenn. June 5, 2014) (holding that claims by

8

Five Star employees that the terms of this same Arbitration Agreement prevent them from vindicating their substantive rights is itself subject to arbitration where the Delegation Provision was not specifically challenged).

Accordingly, as Plaintiffs did enter into the Arbitration Agreement, it is for the arbitrator to address the merits of Plaintiffs' challenge to the enforceability of the Arbitration Agreement's discovery limitations in the first instance.

### B.  Motion to Dismiss

Five Star also moves for dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative to dismissal, Five Star's supporting memorandum asks for a stay of litigation. The Court declines to dismiss the case and will instead stay proceedings pending arbitration for two reasons.

First, Five Star has moved for dismissal under the wrong rule. Arbitration clauses are forum-selection clauses. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). Thus, in this this Circuit, motions to dismiss claims because the claims are subject to binding arbitration are properly made under Rule 12(b)(3). *Aggarao*, 675 F.3d at 365 n.9.[1] This Court's subject-matter jurisdiction is not subject to diminution by private agreement. And Five Star has not denied that Plaintiffs have in fact stated a claim under the FLSA. Five Star's objection is to Plaintiffs' desire to seek vindication of their rights under the laws of the United States before the United States

---

[1] The circuits are divided on this question. *Compare United States ex rel. Lighting & Power Servs., Inc. v. Inferface Constr. Corp.*, 553 F.3d 1150, 1152 (8th Cir. 2009) (affirming dismissal under Rule 12(b)(1) (lack of subject-matter jurisdiction)) *with Palko v. Airborne Express, Inc.*, 372 F.3d 588, 597–98 (3rd Cir. 2004) (observing that dismissal "because the dispute is covered by an arbitration provision is generally effected under Rule 12(b)(6) covering dismissals for failure to state a claim upon which relief can be granted") *with Gratsy v. Colo. Technical Univ.*, 599 Fed. App'x 596, 597 (7th Cir. 2015) ("Motions to compel arbitration thus concern venue and are brought properly under Federal Rule of Civil Procedure 12(b)(3), not Rule 12(b)(1).").

9

Courts rather than before NAM, Inc., a for-profit corporation retained by the opposing party.

Second, even if the Court construes Five Star's Motion under Rule 12(b)(3) as an assertion that this Court is an improper venue for claims that the parties have agreed to arbitrate, a stay, rather than dismissal, is preferable. While a stay is mandatory under the FAA, dismissal in lieu of a stay appears discretionary in this Circuit. *See Choice Hotels*, 252 F.3d at 709–10 (describing dismissal as "an appropriate remedy"). Given the tension between the Fourth Circuit's decisions on this question, *Aggarao*, 675 F.3d at 376 n.18, a stay is more prudent than dismissal. "[T]he dismissal of a case is a 'drastic remedy [that] should be employed only sparingly.'" *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014) (quoting *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir. 1999)).

Because the Court finds that the parties entered into an arbitration agreement subjecting the matters asserted in the Complaint to arbitration, Defendant's motion to compel arbitration (Dkt. No. 7) is hereby **GRANTED**, Defendant's motion to dismiss (Dkt. No. 7) is hereby **DENIED**, and, pursuant to 9 U.S.C. § 3, this civil action is **STAYED** during the pendency of the arbitration proceeding.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

January 8, 2016
Charleston, South Carolina